UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARVIN SEEGER, TINA SCHULTZ
and SANDRA KNESLEY,

        Plaintiffs,

    v.            Case No. 05-C-944

AID ASSOCIATES, INC., d/b/a
PLAZA ASSOCIATES,

        Defendant.

DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS

  On September 1, 2005, Marvin Seeger filed a complaint alleging that the Aid Associates, doing business as Plaza Associates ("Plaza"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, by mailing a letter to debtors that falsely stated that Plaza was licensed by the Office of the Administrator of the Division of Banking. On November 15, 2005, Marvin Seeger filed an amended complaint and added Tina Shultz and Sandra Knesley as plaintiffs. Included in the plaintiffs' complaint are class action allegations. On October 23, 2006, the court entered an order granting plaintiff's motion to file a second amended complaint. This complaint correctly identified the defendant and expanded the putative class.

  This case was reassigned to this court upon all parties consenting to the full jurisdiction of a magistrate judge. On November 7, 2006, the plaintiffs filed a motion to certify the class, along with a stipulation that all discovery necessary to resolve this motion had been completed. On January 2,

2007, the defendant filed a motion for summary judgment and January 8, 2007 the plaintiffs filed their own motion for summary judgment. On January 31, 2007, the defendant filed a motion to strike certain statements from the plaintiffs' filings. On February 28, 2007 and March 16, 2007, the defendant filed motions for leave to cite additional authority. The pleadings on these motions are closed and the matters are ready for resolution.

## FACTUAL SUMMARY

The facts in this case are straightforward and essentially undisputed. Plaza is a debt collector and the plaintiffs are debtors residing in Wisconsin. During June through September of 2005, each of the plaintiffs received a debt collection letter from the defendant, which stated that Plaza was "licensed by the Office of the Administrator of the Division of Banking of the State of Wisconsin. (Second Amended Compl. Docket No. 22, Exs. A-C.) At the time these letters were sent to the plaintiffs, Plaza was not licensed by Wisconsin's Office of the Administrator of the Division of Banking for any purpose. (Ans. Second Amended Compl. Docket No 23, ¶12.) Plaza subsequently obtained a Wisconsin Collection Agency license on July 7, 2006. (Second Amended Compl. Docket No. 22, ¶13.)

Plaza began including this licensing language after Plaza's Director of Business Affairs, noticed that Plaza's collection letters did not include a statement regarding licensing that the American Collectors Association ("ACA") allegedly stated was required for letters sent to Wisconsin debtors. (Kvietkus Dep. at 21 (included as Ex. E to Blythin Decl. of Jan. 8, 2007) (Docket No 46-3.) Plaza's business affairs director then notified its compliance officer to investigate whether or not Plaza's letters required the licensing language. (Kvietkus Dep. at 21.)

Plaza's compliance officer, a paralegal, contacted the American Collector Association, which gave him "some information" that the compliance officer does not recall, "and that was it." (Dellamonica Dep. at 12, 19 (included as Ex. F to Blythin Decl. of Jan. 8, 2007) (Docket No. 46-

3).) The compliance officer does not recall if he took any steps to investigate whether Plaza held any license with the state of Wisconsin at that time. (Dellamonica Dep. at 20-23.)

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## ANALYSIS

15 U.S.C. § 1692e prohibits dept collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Specifically, § 1692e(1) prohibits debt collectors from making "[t]he false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof," and § 1692e(9) prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." More generally, § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Wisconsin State Statute § 218.04(2) requires collection agencies to obtain a license except in instances where the collection agency is not a resident of Wisconsin and conducts collection business with Wisconsin residents solely by means of interstate communications or interstate mail. Plaza fell within the exception to the licensing requirement and thus was not required to obtain a license.

Plaza argues that its letters did not violate the FDCPA; however, the precise basis for its argument is admittedly somewhat puzzling to this court. Although Plaza points out that violations of state law do not necessarily constitute violations of the FDCPA, see Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996); Carlson v. First Revenue Assur., 359 F.3d 1015 (8th Cir. 2004), what Plaza neglects to consider is that the plaintiffs do not allege, nor is there any evidence to suggest, that Plaza violated Wisconsin's licensing law. "Whether a license or a statement about licensing was required by state law is irrelevant" to the question of whether the FDCPA was violated. Radaj v. ARS Nat'l Servs., 2006 U.S. Dist. LEXIS 68883, *8 (E.D. Wis. 2006). It is well

4

understood that Plaza was not licensed by the state of Wisconsin and was not required to be so licensed.

Plaza states in its brief in support of its motion for summary judgment, "it can hardly be alleged that including language in its letters that it was licensed by the Office of the Division of Banking when it was not so licensed is misleading, false or harassing, especially since plaintiffs do not challenge any other language in Plaza's letters." (Plaza Brief, Docket No. 36 at 9.) In other words, Plaza admits that its letters contained the false statement, but contends that this statement could hardly be considered false or misleading.

The law in the Seventh Circuit is clear: "Debt collectors may not make false claims, period." Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004); see also, Radaj v. ARS Nat'l Servs., 2006 U.S. Dist. LEXIS 68883, *7 (E. D. Wis. 2006) ("The language of the statute is plain and unambiguous: a debt collector may not use *any* false or misleading representation in connection with the collection of any debt." (emphasis in original)). The evidence in this case is similarly clear: Plaza made the false statement that it was licensed by the state of Wisconsin. Thus, Plaza violated the FDCPA.

However, Plaza argues that the bona fide error defense should protect it from liability for falsely stating that it was licensed by the state of Wisconsin. A debt collector shall not be liable for violations of the FDCPA if the debt collector is able to show by a preponderance of the evidence that its violation of the FDCPA was not intentional and that it had reasonable procedures in place to avoid such an error. 15 U.S.C. § 1692k(c).

Plaza points to the fact that it included the language at issue in this case after allegedly being told by the ACA that such language was required in letters being sent to Wisconsin debtors. Plaza had a paralegal, who worked as its compliance officer, investigate whether this language was required. The only investigation that the compliance officer recalls conducting is again contacting

5

the ACA who again allegedly told Plaza that such language was required. There is no evidence Plaza ever took any steps to investigate whether ACA's representation of Wisconsin law was correct, or whether Plaza was, in fact, licensed by the state of Wisconsin, and thus could honestly represent this fact.

It is not Plaza's mistaken belief that the statement was required that is at issue here. If the claim in this case was that the inclusion of superfluous information somehow violated the FDCPA, then the steps undertaken by Plaza may justify the application of the bona fide error defense. However, the claim in this case does not focus on the act of inclusion, but on the language itself, i.e., whether Plaza was licensed as it said it was.

Plaza presents no evidence of any steps or procedures it undertook to investigate its license status. As such, Plaza is precluded from relying upon the bona fide error defense. Perhaps Plaza intends to argue that it believed that Wisconsin required the statement at issue here regardless of the debt collector's license status and therefore an investigation into Plaza's license status was unnecessary. Although the court is not sure that Plaza intends to make this argument, the argument that it would be reasonable to believe that a state would require a false statement to be included in letters sent to its resident debtors is illogical to the point of absurdity, and thus the bona fide error defense is inapplicable.

Additionally, Plaza argues that the plaintiffs have failed to present any evidence that either they or an unsophisticated consumer would be confused or deceived by such language. It is correct that the plaintiffs have presented no evidence that they were individually harmed by the misrepresentation, but such proof is irrelevant to question of recovery of statutory damages. See Keele v. Wexler, 149 F.3d 589, 593 (7th Cir. 1998) (citing Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997); Baker v. G.C. Servs. Corp., 677 F.2d 775, 781 (9th Cir. 1982)).

6

Finally, the fact that the plaintiffs fail to present extrinsic evidence as to how the letter would be interpreted by an unsophisticated consumer is similarly irrelevant in this case. "In some situations, when an FDCPA violation is so 'clearly' evident on the face of a collection letter, a court may award summary judgment to the FDCPA plaintiff." Durkin v. Equifax Check Servs., 406 F.3d 410, 415 (7th Cir. 2005). In a situation such as this where the claim is not that the statement was misleading but rather objectively false, it is unnecessary for the plaintiff to present extrinsic evidence regarding how an unsophisticated debtor may interpret the statement. The reason why such extrinsic evidence is unnecessary should be clear; the parties agree that the statement was false and thus it is absolutely unreasonable to argue that an unsophisticated debtor, let alone any person, would reach any other conclusion. Any debtor, unsophisticated or not, would interpret this language as Plaza being licensed by the State of Wisconsin. The statement was false and misleading; there is simply no other way to look at it. No additional evidence is necessary to prove an objective undisputed fact.

## MOTIONS TO CITE ADDITIONAL AUTHORITY

Plaza has filed a motion for leave to cite additional authority, specifically Robbins v. Wolpoff & Abrahamson, L.L.P, 06-C-315 (E.D. Wis. Feb. 22, 2007), which was decided by Chief Judge Rudolph T. Randa after the pleadings on the present parties' pending motions closed. Plaza's motion to cite additional authority shall be granted; however, the additional authority is distinguishable and thus of no benefit to Plaza. In Robbins, Chief Judge Randa determined that, although a debt collection letter did contain false information in that the letter stated that the debt collector was required to disclose to the debtor information that it was, in fact, not legally required to disclose, this was not the sort of falsehood that Congress intended to prohibit in passing the FDCPA and thus did not constitute a violation of the FDCPA.

The plaintiffs argue that Robbins was incorrectly decided and is inconsistent with the law in the Seventh Circuit and thus should not be followed by this court. Whether or not the Robbins decision correctly comports with Seventh Circuit case law need not be addressed. This is because this court believes that the false statement used by Plaza that it was licensed by the state of Wisconsin, is precisely the kind of misrepresentation that Congress sought to prohibit when it passed the FDCPA. Congress' intent to prohibit such misleading statements is evidenced by the fact that § 1692e(1) specifically prohibits debt collectors from making "[t]he false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof." By falsely stating that it had obtained a license from the state of Wisconsin, Plaza created the false implication that it was vouched for by the state of Wisconsin. Such conduct is expressly prohibited by the FDCPA.

Plaza has also filed a motion to cite Ella Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 06-2059, 2007 WL 675625, 2007 U.S. App. LEXIS 5260 (7th Cir. March 7, 2007). The court shall grant this motion. However, the court does not regard this additional authority as relevant to the issues presented in this case.

## MOTION TO STRIKE

Plaza has filed a motion alleging that certain of plaintiff's proposed finding of fact and responses to defendant's proposed findings of fact are argumentative, narrative, and based upon mischaracterizations of deposition testimony. As relief, Plaza requests that the court disregard the plaintiff's challenged proposed findings of fact and strike the plaintiffs' responses to Plaza's proposed findings of fact and deem Plaza's proposed facts as admitted. Plaza alleges that paragraphs 16 and 17 of the plaintiffs' additional findings of fact are arguments based upon speculation and should be stricken.

As for plaintiff's responses to Plaza's proposed findings of fact, Plaza argues that paragraphs 16, 19, 20 and 24-26 should be stricken and Plaza's proposed findings of fact deemed admitted on the basis that the plaintiffs submitted a narrative response, reciting deposition testimony rather than merely citing pages. Plaza further argues that responses to paragraphs 24-28 and 33 should be stricken because they are argumentative and therefore inappropriate under Civil L.R. 56.2(b). Finally, Plaza argues that paragraphs 16, 19, 20, 21, and 24- 28, should be stricken because they are argumentative.

The court finds it unnecessary to analyze each of Plaza's assertion's in detail. The court declines to exercise its discretion and order that the plaintiff's proposed findings of fact or responses be stricken. The court finds nothing in the plaintiffs' actions that would warrant the application of this remedy. Rather, to the extent that the plaintiffs' responses cross the line into argument, the court shall simply disregard such argument.

## MOTION FOR CLASS CERTIFICATION

The plaintiffs have filed a motion for class certification pursuant to Federal Rule of Civil Procedure 23. The plaintiff's proposed class consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter stating that Plaza Associates was licensed by the Office of the Administrator of the Division of Banking for the State of Wisconsin, (c) seeking to collect a debt for personal, family, or household purposes, (d) between September 1, 2004 and July 6, 2006, inclusive, (e) that was not returned by the postal service.

The party seeking certification of the class bears the burden of demonstrating that all of Rule 23's requirements have been satisfied. <u>Amchem Prods. v. Windsor</u>, 521 U.S. 591, 614 (1997). A class action is appropriate only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Additionally, one of the three subsections of Federal Rule of Civil Procedure 23(b) must be satisfied. In the present action, the plaintiff's allege that Rule 23(b)(3) is applicable, specifically that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The parties do not dispute that the plaintiffs satisfied the requirements of Rule23(a)(1). The defendant admitted during discovery that during the period from September 1, 2004 to September 1, 2005, there are approximately 871 potential class members, (Docket No. 27-5 ¶6.); in its response to the plaintiffs' motion to certify the class, the defendant alleges, without reference to anything in the record, that there are 5,897 potential class members. In that same paragraph, defendant indicates, again without any support in the record, that the "net worth that is at issue" is about $126,000. In their reply brief, plaintiffs do not take issue with the foregoing representations and use those figures in their argument. (Docket No. 30-5 at 7.) Additionally, the parties do not dispute that subsections (2) and (3) of Rule 23 are satisfied. Based upon the proposed definition of the class, the class members necessarily have common questions of law and fact and similar, if not identical, claims. The defendants argue against certification of the class on the basis that a class action is an inferior method for adjudicating the claims of the class members and that the class representatives would not adequately represent the interests of the class members.

The FDCPA has special provisions relating to matters proceeding as class actions. Specifically, all class members are limited to recovering the lesser of $500,000 or one percent of the net worth of the debt collector. 15 U.S.C. § 1692k(a)(2)(B). According to the defendant's response, one percent of the net worth of the defendant is approximately $126,000. (Docket No. 30-5 at 7.) Therefore, each of the alleged 5,897 class members would be entitled to a maximum recovery of

10

approximately $21. However, if each of the alleged 5,897 class members proceeded against the defendant individually, each may be entitled to recover up to $1,000. 15 U.S.C. § 1692k(a)(2)(A). The defendant argues that a potential recovery of only $21 per class member is de minimis and therefore the class should not be certified.

The Seventh Circuit has stated that a monetarily de minimis recovery should not necessarily bar class certification when a class action would be an effective mechanism for resolving claims that individuals might otherwise not pursue because of the burdens of litigation and the relatively paltry potential payoff. Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997). A court cannot refuse to certify a class action simply because a plaintiff may stand to recover more if he pursued a claim individually rather than as part of the class because, although the FDCPA permits individual recoveries of up to $1,000, this assumes that the individual is aware of his rights, willing to undertake the burdens of a lawsuit, and able to find an attorney willing to take his case. Id. A court must carefully consider these factors when deciding whether to certify a class. Id. "Only when all or almost all of the claims are likely to be large enough to justify individual litigation is it wise to reject class treatment altogether. Murray v. GMAC Mortg. Corp., 434 F.3d 948, 953 (7th Cir. 2006).

It is incredibly unlikely that all of the 5,897 potential class members would participate in a class action. Thus, $21 represents a minimum recovery provided damages are determined to be at least this amount and all potential class members participate. However, the plaintiffs estimate that perhaps 10 to 15 percent of the potential class members would elect to participate and thus the pro rata recovery per participating class member would be up to $143 to $214.

Certainly, a class action would be more effective in informing putative plaintiffs of their rights after having received the defendant's form letter. Undoubtedly, most of these persons are unaware that the letter they received years ago violated the FDCPA, and if any are aware, few

would pursue litigation. The defendant is well aware of this fact. The defendant implicitly concedes as much for if it was not true, it would be entirely illogical for the defendant to oppose certification of the class and rather wish to pursue a path that could potentially expose it to nearly six million dollars of liability (5,897 at $1,000 each), more than forty-six times the damages that it would face under a class action suit.

Although the potential recovery is comparatively little compared to the statutory maximum that a debtor may obtain if he pursued a claim individually, the court finds that a class action is nonetheless a superior means for resolving this case in light of the fact that absent a class action, likely few potential class members would be aware of their claim. Even if a sophisticated debtor received the defendant's letter, such a person would be unlikely to detect the falsehood, unless that person was familiar with the state's Division of Banking. The fact that apparently only three out of allegedly six thousand recipients have undertaken legal action in response the letter containing the defendant's misrepresentation is strong evidence that likely no other potential class members would otherwise pursue relief for the defendant's misrepresentation. Therefore, in light of the factors set forth in Mace, the court concludes that the plaintiffs have met their burden to demonstrate that a class action is a superior means of resolving the claims of the potential class members.

The defendant next alleges that the plaintiffs have failed meet their burden under Rule 23(a)(4) to demonstrate that the class representatives will fairly and adequately protect the interests of the class. The defendant alleges that the plaintiffs would be ineffective class representatives because they have not demonstrated an understanding of their claim, the status of the case, or the qualifications of their attorneys. (Docket No. 30-5 at 9-10.) However, even if a plaintiff possesses minimal knowledge of case, is unable to understand the complaint, name the defendants, or describe their misconduct, that does not render the named plaintiff an ineffective class representative. Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890,

898 (7th Cir. 1981) (citing Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 366, (1966)). "Generally, plaintiffs are adequate class representatives if they are aware of what the lawsuit is about and are informed of its progress by counsel." Margolis v. Caterpillar, Inc., G.A., 815 F. Supp. 1150, 1154 (C.D. Ill. 1991) (citing Grossman v. Waste Management, 100 F.R.D. 781, 790 (N.D. Ill. 1984)). "Rather than the Plaintiff's knowledge of the claim, the critical issue is whether they are committed to the prosecution of the action." Id. (citing Hohmann v. Packard Instrument Company, 399 F.2d 711, 714 (7th Cir. 1968)).

It is clear from the plaintiffs' depositions that their understanding and participation in this case varies, but in all cases is minimal. Knesley was unaware what motions have been filed in the case, whether a motion for class certification had been filed, unaware what she is seeking to recover, chose her present attorneys after selecting them from the phone book to handle her bankruptcy, has met with her attorneys regarding this matter only once before giving her deposition, and believes that this lawsuit is against Citgo. (Docket No. 33-6 at 4-6.) Schultz similarly became acquainted with her present attorneys as a result of their having handled her bankruptcy, (Docket No. 33-7 at 4), and when asked to explain why she was confident in her attorney's ability to handle her bankruptcy case she stated, "And he had Marquette up there [on the wall] so I know Marquette law, like that is in Milwaukee, you know, that is one of the best places, so I'm like wow. Yeah." (Docket No. 33-8 at 5). She is also unaware of what motions have been filed and whether a motion for class certification had been filed. (Docket No. 33-8 at 6-7.)

Like Schultz and Knesley, Seeger became acquainted with his present attorneys as a result of their having handled his bankruptcy. (Docket No. 33-3 at 4.) Like Knesley, Shultz chose his present attorneys by picking them out of the phone book. (Docket No. 33-4 at 1.) However, Seeger is also a class representative in another FDCPA class-action case that is being handled by the same attorneys. See Seeger v. Afni, Inc., 05-C-714 (E.D. Wis.) (class certified August 9, 2006). Seeger

13

also utilized the same attorneys in another FDCPA case in which he was a plaintiff and received three or four hundred dollars. See Alexander v Nations Recovery Center, Inc., 05-C-781 (E.D. Wis.) (stipulation of dismissal January 3, 2006); (Docket No. 33-3 at 4.) When asked about what damages the class may recover, he said that he believed that each class member may recover between one and five hundred dollars. (Docket No. 33-4 at 5.) Seeger was not aware of what motions had been filed in the case, but believed that a motion for class certification had been filed. (Docket No. 33-4 at 5.)

When each named plaintiff was asked what each understood the duties of a class representative to be, Knesley stated she understood her role to be "[t]o speak for all of us. To be able to appear when necessary." (Docket No. 33-6 at 3). Schultz stated she understood her role as a class representative is to "be knowledgeable on all of the elements of the case and why it was filed, and what's going on . . . ." (Docket No. 33-8 at 6.) Seeger stated he understood his role to be "[t]o represent the class. To come to these Interrogatory and discovery sessions. To represent us in court. And make sure that the lawyers are qualified to handle the case. I think there is one more, but I don't remember. There was five things discussed. I don't remember what the last one is right now." (Docket No 33-4 at 4.)

> Clearly, these plaintiffs are not the driving force behind this litigation.
>
> Rather, the driving force behind these cases is the class action attorneys. They have a strong incentive to litigate these cases--oftentimes despite their marginal impact--in the form of attorneys' fees and costs they hope to recover. Not surprisingly, then, "FDCPA litigation is a breeding ground for class actions." Lawrence Young & Jeffrey Coulter, Class Action Strategies in FDCPA Litigation, 52 Consumer Fin. L.Q. Rep. 61, 70 (1998). . . . [I]t is these attorneys' fees which are a significant inducement for FDCPA class action lawsuits. [Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)]; see Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 58 (2d Cir. 2000) (in many class action cases the plaintiffs "are mere 'figureheads' and the real reason for bringing such actions is 'the quest for attorney's fees.'"). Unfortunately, as Judge Winter of the Second Circuit has noted, these attorney fees strongly encourage class actions, many of which are frivolous. See Ralph K. Winter, Paying Lawyers, Empowering

14

> Prosecutors, and Protecting Managers: Raising the Cost of Capital in America, 42 Duke L. J. 945, 949 (1993). The history of FDCPA litigation shows that most cases have resulted in limited recoveries for plaintiffs and hefty fees for their attorneys. Consider the recent case of Crawford v. Equifax Payment Servs., Inc., where a negotiated settlement provided $ 2,000 to the class representative, $78,000 to the plaintiff's attorneys, and nothing for the rest of the class. 201 F.3d 877, 880 (7th Cir. 2000) (reversing the approval of the settlement). The impetus of that suit clearly was not the plaintiffs' share of the award. See Winter, [42 Duke L. J.] at 949 (in derivative class action settlements, plaintiffs recover only 50% of the time while their attorneys receive fees in 90% of the cases). Crawford and similar cases illustrate "the all-too-common abuse of the class action as a device for forcing the settlement of meritless claims and is thus a mirror image of the abusive tactics of debt collectors at which the statute is aimed." White v. Goodman, 200 F.3d 1016, 1019 (7th Cir. 2000).

Sanders v. Jackson, 209 F.3d 998, 1003-1004 (7th Cir. 2000).

Nonetheless, the court is satisfied that the plaintiffs have met their burden under Rule 23(a)(4). The class representatives possess the same interests and suffered the same injury as the class members. See East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) (quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216 (1974)). The plaintiffs have demonstrated that each representative appropriately understands the duties and responsibilities of being a class representative. Therefore, the court shall certify the class as proposed by the plaintiffs.

Upon certifying a class, Rule 23(g) requires a court to appoint class counsel. Counsel for the plaintiffs, the law firm of Ademi & O'Reilly, LLP, requests that it be appointed as class counsel. (Mot. to Certify Class, Docket No. 25.) The defendant offers no objection to this appointment. Having reviewed the law firm's biography, which lists cases in which the law firm was appointed as class action, and considering the factors set forth in Rule 23(g)(1)(B) and (C), the court is satisfied that the law firm of Ademi & O'Reilly, LLP, is capable of fairly and adequately representing the interests of the class and therefore shall be appointed as class counsel.

**IT IS THEREFORE ORDERED** that the plaintiffs' motion to certify class, (Docket No. 25), is granted.

The class is hereby defined as: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter stating that Plaza Associates was licensed by the Office of the Administrator of the Division of Banking for the State of Wisconsin, (c) seeking to collect a debt for personal, family, or household purposes, (d) between September 1, 2004 and July 6, 2006, inclusive, (e) that was not returned by the postal service.

Pursuant to Federal Rule of Civil Procedure 23(g)(2)(B), the law firm of Ademi & O'Reilly, LLP, is appointed as class counsel.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (Docket No. 35) is **denied**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for summary judgment (Docket No. 40) is **granted**.

**IT IS FURTHER ORDERED** that the defendant's motion to strike (Docket No. 50) is **denied**.

**IT IS FURTHER ORDERED** that the defendant's motions to cite additional authority, (Docket Nos. 55 and 58) are **granted**.

**IT IS FURTHER ORDERED** that this court shall conduct a telephone status conference on **April 10, 2007** at **8:30 a.m.** to discuss further proceedings in this case. The court shall initiate the call.

Dated at Milwaukee, Wisconsin this 29th day of March 29, 2007, 2007.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge